UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       vs.                 :        Crim. No. 07 CR 403 (PKC)

MAURICIO MAZZA-ALALUF,       :

           Defendant.      :

**DEFENDANT'S MOTION TO DISMISS**
**COUNTS ONE AND TWO OF THE INDICTMENT**

COMES NOW defendant, MAURICIO MAZZA-ALALUF, by and through undersigned counsel, and for the reasons set forth in the accompanying Memorandum of Law, moves this Honorable Court pursuant to Federal Rule of Criminal Procedure § 12(b)(3)(B) to dismiss Count One of the indictment for failure to state an offense under 18 U.S.C. § 371; and, in the alternative, to dismiss Count One of the indictment on the ground that 18 U.S.C. § 1960 is unconstitutionally vague; and to dismiss Count Two of the indictment on the ground that 18 U.S.C. § 1960 is unconstitutionally vague . Defendant also requests such further and different relief as this Court finds just and proper.

Dated: New York, New York
       August 25, 2008

                      ROTHMAN, SCHNEIDER
                        SOLOWAY & STERN, LLP
                      Attorneys for Mauricio Mazza-
                        Alaluf
                      100 Lafayette Street
                      New York, New York 10013
                      (212) 571-5500

By:                            
                      ROBERT A. SOLOWAY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

          vs.

MAURICIO MAZZA-ALALUF,

              Defendant.

:    MEMORANDUM OF LAW

:    Crim. No. 07 CR 403 (PKC)

:

:

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), "at any time while the case is pending the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B).

The instant indictment charges the defendant, MAURICIO MAZZA-ALALUF, with one count of conspiracy to operate an unlicensed money transmitting business in violation of 18 U.S.C. § 371 (Count One) and one count of the substantive offense of operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 (Count Two).

In order to be an unlicensed money transmitting business in contravention of the statute, a business must first meet two threshold requirements. First, it must be a "money transmitting business"; second, it must be one that "affects interstate or foreign commerce." 18 U.S.C. § 1960(b)(1). In addition to those prerequisites, a business is an unlicensed money transmitting business only if it satisfies at least one of three additional

1

conditions: (1) the business must be operating without the appropriate state license in a state where such operation is a misdemeanor or a felony; (2) the business must "fail to comply with the money transmitting business registration requirements" set forth in 31 U.S.C. § 5330, or regulations promulgated thereunder; or (3) the business must involve the transportation or transmission of funds that are known to the defendant to have been derived from or intended to be used to promote or support unlawful activity. 18 U.S.C. §§ 1960(b)(1)(A)-(C).

1.  COUNT ONE SHOULD BE DISMISSED BECAUSE A PERSON CANNOT CONSPIRE TO COMMIT AN OFFENSE WHICH LACKS A CULPABLE MENTAL STATE ELEMENT.

Count one charges the defendant with violation of 18 U.S.C. § 371 on the basis that he operated a money transmitting business without a required license under both the State and federal licensing subsections of Section 1960.

The statute the defendant allegedly conspired to violate provides that "whoever knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business" is guilty of a crime. The cases establish, however, that employment of the word "knowingly" establishes no scienter element which would call upon the government to prove the defendant knew he was acting wrongfully or that he willfully ran afoul of the law.

Some courts have described the licensing statute as setting forth a "general intent" crime which lacks a mens rea only as to

2

the statute's "legal requirements," but which otherwise requires the government to prove the defendant "knew" he was operating a money transmitting business and that it was unlicensed.  The Fourth Circuit has so held:

> As noted above, § 1960(b)(1)(A) provides that it is a federal offense to (1) operate a money transmitting business, (2) that affects interstate commerce, and (3) that is unlicensed under state law, when (4) state law requires a license and (5) state law punishes lack of a license as a felony or misdemeanor. *See* 18 U.S.C.A. § 1960(b)(1)(A).  The parties agree that the Government must allege and prove the defendant's knowledge with respect to the first three elements and that Congress explicitly excluded any *mens rea* requirement from the last two elements.

United States v. Talebnejad, 460 F.3d 563 (4th Cir. 2006).

In contrast, in United States v. Bah, 2007 WL 1032260 (S.D.N.Y. 2004), Hon. Lewis A. Kaplan held that a Section 1960 indictment grounded on the theory that the subject money transmitting was effectuated in violation of New York State law charged a "strict liability" offense:

> Given the [New York State] Legislature's obvious attention to defining violations of [Banking Law] Section 650 with reference to a defendant's state of mind, I conclude that the omission of any requisite mental state in the definition of the misdemeanor set forth in Section 650, subd. A ... clearly indicates that the legislature intended that to be a strict liability crime.  No culpable mental state is required.  In consequence, one who "engages" in New York "in the business of receiving money for transmission or transmitting the same" without a New York State license violates 18 U.S.C. § 1960.

Similarly, in the District Court in United States v.

Talebnejad, Hon. Peter J. Messitte held that Congress did not intend Section 1960 to require proof of any culpable mental state on the part of a defendant charged with operating an unlicensed money transmitting business in violation of State law:

> There is no doubt that Congress attempted to exclude any mens rea requirement when it amended § (b)(1)(A) [of Section 1960]. A violation occurs 'whether the defendant knew that the operation was required to be licensed or that the operation was so punishable.'

United States v. Talebnejad, 342 F.Supp.2d 346, 353 (D.Md. 2004).

Nor does a Section 1960 offense founded on the failure of the defendant to comply with the federal registration requirements set forth in 31 U.S.C. § 5330 contain any requirement that the government establish a knowing or willful violation of the licensing requirement. Again, Judge Kaplan stated in Bah:

> Nothing in [31 U.S.C.] Section 5330 [setting forth the federal registration requirements] suggests a specific intent requirement and there is no reason why one should be imported into section 1960 via section 5330.

Bah, 2007 WL 1032260 (S.D.N.Y. 2004). See, also United States v. Uddin, 365 F.Supp.2d 825, 830 (E.D.Mich. 2005)("placing the description of the offense and the definition of the terms used to describe the offense in separate subsections of Section 1960 demonstrates that Congress did not intend for proof of the defendant's knowledge of either state licensing or federal registration requirements to be an element of a Section 1960 offense.")

4

Pursuant to 18 U.S.C. § 371, it is unlawful for two or more persons "to conspire to commit any offense against the United States," or to "defraud the United States or any agency thereof in any manner for any purpose." It is plain that the instant conspiracy charge invokes the former category, as no "defrauding" conduct directed against the United States is alleged in the indictment.

Conspiracies are generally confederations of criminals who join together scheming to violate the law. In the evolution of the law of conspiracy in the United States, concerted law-breaking was the evil which early prosecutions targeted; and the dangers posed by the secretive actions of criminal groups justified the prosecution of agreements to break the law and sustained such prosecutions against the objection of many critics. A typical example of the language justifying prosecutions for conspiracy appears in United States v. Rabinowich, 238 U.S. 78 (1915):

> For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered.

Rabinowich, 238 U.S. at 88.

Many early conspiracy cases contain various formulations of

> substantive offense itself, or in addition thereto,
> suggest that loose practice as to this offense
> constitutes a serious threat to fairness in our
> administration of justice.

<u>Krulewitch v. United States</u>, 336 U.S. 440, 445 (1949)

Judge Learned Hand, too -- struck by the propensity of prosecutors to charge conspiracy where it seemed to lack rational application -- made a famous observation which is specifically relevant to the instant prosecution:

> While one may, for instance, be guilty of running
> past a traffic light of whose existence one is
> ignorant, one cannot be guilty of conspiring to run
> past such a light for one cannot agree to run past
> a light unless ones supposes that there is a light
> to run past.

<u>United States v. Crimmins</u>, 123 F.2d 271, 273 (2nd Cir. 1941).

Inherent in this observation is the idea that it is a prerequisite to conspiring to commit a crime, including running past a traffic light, that one first know the light is there, for only then may the possibility exist of forming, first, an individual purpose, and second, an agreement with another, to run past it. As applied to the instant charge, however, the defendant could not secretly scheme and agree with others to violate a money transmitting licensing rule that he did not even know existed.

Thus, while Congress has limited authority to make criminal laws which lack a <u>mens</u> <u>rea</u> requirement, the instant conspiracy prosecution -- in which the government has no burden to show the defendant knew of any necessity to obtain a money transmitting

license -- leaves us to ponder with Judge Hand how a person may be guilty of plotting and agreeing with others to violate a registration requirement which he does not know exists.

For this reason then, as it is factually impossible for the defendant to have committed a conspiracy crime which contradicts the very essence of the law of conspiracy, count one of the indictment must be dismissed for failure to state an offense.[1]

**2. COUNTS ONE AND TWO OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE SECTION 1960 FAILS TO PROVIDE FAIR WARNING OF THE CONDUCT IT PROSCRIBES.**

A. The statute is unconstitutionally vague.

A criminal statute that fails to provide fair warning of the

---

[1]

Of Section 1960's enormous sweep and unusual lack of mens rea, Courtney J. Linn, Assistant U.S. Attorney for the Office of the United States Attorney, Eastern District of California, has written:

> Section 1960's registration element is unprecedented in both its power and complexity. No other BSA violation is punished as a Title 18 offense. Furthermore, virtually no other BSA violation premised on a failure to act can be proven without proof that the defendant knew of the duty to act and willfully failed to fulfill that duty. The statute is also unusually complex. Nowhere else has Congress entrusted the meaning of an element of a Title 18 offense to regulators with the Treasury Department. And ... the regulations that implement the federal registration requirement, and thus define who is subject to prosecution under § 1960, includes tangles of exceptions and qualifications.

Courtney J. Linn, One Hour Money Laundering, Prosecuting Unlicensed Money Transmitting Businesses Under 18 U.S.C. § 1960, 8 U.C. Davis Bus. L.J. 138 (2007).

conduct it proscribes violates the Due Process Clause of the United States Constitution. See United States v. Lanier, 520 U.S. 259, 266 (1997); Bouie v. City of Columbia, 378 U.S. 347, 350-51 (1964). This "fair warning requirement" manifests itself in three ways:

> First, the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application' ... Second, as a sort of 'junior version of the vagueness doctrine,' ... the rule of lenity ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered ... Third ... due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

Lanier, 520 U.S. at 266 (internal citations omitted).

By its terms, Section 1960 applies to "money transmitting business[es]." 18 U.S.C. § 1960. Section 1960(b)(1)(A) criminalizes unlicensed money transmitting in a state where such operation is punishable as a misdemeanor or felony. 18 U.S.C. § 1960(b)(1)(A). Section 1960(b)(1)(B) provides that an "unlicensed money transmitting business" is one that does not "comply with the money transmitting business registration requirements under section 5330 of Title 31, United States Code, or regulations prescribed under such section." 18 U.S.C. § 1960(b)(1)(B). In turn, such "business registration requirements" provide that "the Secretary of the Treasury shall prescribe, by regulation, the form and manner for registering a money transmitting business." 31 U.S.C. §

business had no customers, clients, employees, offices, or operations in the United States and that it received no money in the United States. A copy of the defendant's affidavit, sworn December 7, 2007, is annexed as Exhibit A.

Further, the Financial Crimes Enforcement Network of the Treasury Department ("FinCen") has issued a letter ruling dated March 29, 2004 in which FinCen specifically states that a foreign corporation with no physical presence in the United States and which only maintains bank accounts in the United States, is not subject to the federal money service business registration requirements. The ruling, a copy of which is annexed as Exhibit B, reads in pertinent part as follows:

> To the extent that the currency transactions take place in [the foreign country] for customers located in the foreign country] and []'s use of the Account in such transactions is limited to issuing and clearing monetary instruments, FinCen would not deem the Account an "agent, agency, branch, or office within the United States of SAQS for purposes of 31 C.F.R. § 103.11.(uu), as [] is not engaging in currency exchange transactions within the United States.[2]

---

[2]    Commentator Courtney Linn, Esq. specifically cites this Ruling as evidence that FinCen's registration rules may not apply to foreign businesses and individuals which maintain bank accounts in the United States, but otherwise engage in no money transmitting activities in the United States:

> The federal registration prong could ... apply to a foreign money transmitter, if the transmitter's conduct reached the United States. But even here, FinCen has shown caution. FinCen has opined [in the March, 2004 Ruling] that a foreign currency

Thus, while the indictment adequately alleges that the defendant engaged in "money transmitting," it does not adequately allege that the defendant operated a "money transmitting business" that is required to register.    Accordingly, it fails to allege a violation of operating an unlicensed "money transmitting business" in violation of § 1960.

A criminal law is invalid under the vagueness doctrine when it fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." City of Chicago v. Morales, 527 U.S. 41, 56 (1999). The Supreme Court has stated:

> The degree of vagueness that the Constitution tolerates as well as the relative importance of fair notice and fair enforcement depends in part on the nature of the enactment.

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).

As noted, some courts have held that Section 1960 sets forth a "general intent" crime.   See United States v. Keleta, 441 F. Supp. 2d 1, 1-3 (D.D.C. 2006); see also United States v. Talebnejad, 460 F.3d 563, 568, 572 (4th Cir. 2006) (holding that a

---

exchanger with its principal place of business in a foreign country is not required to register with FinCen, notwithstanding the fact that the currency exchanger uses a U.S. Bank account to clear transactions.

Courtney J. Linn, One Hour Money Laundering, Prosecuting Unlicensed Money Transmitting Businesses Under 18 U.S.C. § 1960, 8 U.C. Davis Bus. L.J. 138 (2007).

defendant need not have knowledge of licensing requirements, but rather need only have knowledge that he or she is operating a money transmitting business), cert. denied, 127 S. Ct. 1313 (2007); United States v. Barre, 324 F. Supp. 2d 1173, 1177 (D. Colo. 2004) (same). In any event, Section 1960 clearly contains no specific intent element that "[might] mitigate a law's vagueness." See Village of Hoffman Estates, 455 U.S. at 499 ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

As discussed, supra, Section 1960 does not itself define "money transmitting business," but rather requires reference to two additional statutes: 31 U.S.C. §§ 5313(a) and 5330(d)(1). Once reaching the definition, one finds that a "money transmitting business" refers to a "a domestic financial institution" and undefined "others" to be designated by the Treasury Department that are required to file reports.

Accordingly, the statute is "so vague that men of common intelligence must necessarily guess at its meaning." See Lanier, 520 U.S. at 266. Given the unclear nature of the rules concerning which "money transmitting" businesses must register, Section 1960 fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." See Morales, 527

13

U.S. at 56.[3]

Thus, Counts one and two of the indictment must be dismissed.

B. The Rule of Lenity Governs the Interpretation of an Ambiguous Statute.

Since it is ambiguous at best whether Section 1960 reaches the conduct alleged in both counts of the Indictment, the rule of lenity dictates that the ambiguity must be resolved in the defendant's favor. When "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." Crandon v. United States, 494 U.S. 152, 158 (1990). As the Supreme Court has stated:

> We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.

Arthur Andersen LLP v. United States, 544 U.S. 696, 703 (2005) (quoting United States v. Aguilar, 515 U.S. 593, 600 (1995)

---

[3] The defendant's Chilean business openly maintained bank accounts in the United States for years and imported bulk quantities of cash into the United States for declaration and deposit into such accounts prior to his March, 2007 arrest. Indeed, on May 5, 2006, the defendant was detained at LAX Airport in Los Angeles by agents of the Drug Enforcement Administration who questioned him about his entry into the country and business practices. The defendant responded. One agent notably records that the defendant "became nervous during questioning and asked if he was doing anything wrong and asked agents if he needed to change his method of operation." It appears no one informed him about the Treasury Department licensing rules. A copy of the DEA-6 is annexed as Exhibit C.

(internal citations and quotation marks omitted)).

The rule of lenity, therefore, "works to protect a citizen from punishment under a statute that gives at best dubious notice that it has criminalized his conduct." Valdes v. United States, 475 F.3d 1319, 1323 (D.C. Cir. 2007). Under this principle, "where text, structure, and history fail to establish the Government's position is unambiguously correct," court's must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." United States v. Granderson, 511 U.S. 39, 54 (1994).

In this case, it cannot be said that the Government's position that Section 1960 applies to the defendant's ownership and control of a foreign business which utilizes bank accounts in the United States, but otherwise has no customers, offices, employees, or operations in the United States, is subject to the State or federal registration requirements is "unambiguously correct." By virtue of Section 5313's specific requirement in the definition of "money transmitting business" of "domestic financial institutions" and others to be "prescribed" by the Treasury Department, Section 1960 does not make reasonably clear that a business that does not have any nexus with the United States other than bank accounts can constitute a "money transmitting business" that is required to register. Thus, the statute fails to make reasonably clear that the defendant's alleged unlicensed operation of his foreign business could subject him to federal criminal penalties.

Accordingly, the Court must resolve that ambiguity in the defendant's favor, and dismiss Counts One and Two of the Indictment.

CONCLUSION

For the reasons set forth above, both Counts One and Two of the Indictment should be dismissed.

Dated: August 25, 2008

> Respectfully submitted,
>
> ROTHMAN, SCHNEIDER
>     SOLOWAY & STERN, LLP
> Attorneys for Mauricio Mazza-
>     Alaluf
> 100 Lafayette Street
> New York, New York 10013
> (212) 571-5500
>
> By: _____
>          ROBERT A. SOLOWAY