UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

MAURICIO ALFONSO MAZZA-ALALUF,

                                        Defendant.

-----------------------------------------------------------x

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                 │
│ DATE FILED: 6-19-09                  │
└─────────────────────────────────────┘
```

S1 07 Cr. 403 (PKC)

MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

       In my findings of fact and conclusions of law following a bench trial, this Court found defendant Mauricio Alfonso Mazza-Alaluf ("Mazza") guilty under 18 U.S.C. § 371 of conspiring to conduct an unlicensed money-transmitting business in violation of 18 U.S.C. § 1960, and guilty of a substantive violation of section 1960. United States v. Mazza-Alaluf, 607 F. Supp. 2d 484 (S.D.N.Y. 2009). Mazza has now moved to dismiss the indictment for lack of subject matter jurisdiction. The motion is premised on an assertion that the application of section 1960 to the facts of this case amounts to an exercise of extra-territorial jurisdiction, which, Mazza argues, is not contemplated by section 1960. For the reasons set forth below, the motion is denied.

       The Court found that in 1988 or 1989, Mazza acquired a business in Santiago, Chile that would become known as Turismo Costa Brava S.A. ("Turismo"). Mazza-Alaluf, 607 F. Supp. 2d at 486. Turismo provided a variety of services, including the transfer of funds to third parties on behalf of customers, and Turismo was described by Mazza as functioning as "an auxiliary to the banking system." Id. at 486-87. At the time of Mazza's arrest, Turismo operated three storefront businesses in Santiago, Chile,

had no branch offices or employees in the United States, and solicited no customers in the United States.  Id. at 487.

However, Turismo opened and maintained bank accounts in the United States, specifically including accounts with the New York-based Israel Discount Bank ("IDB"), the Harris Trust and Savings Bank ("Harris") in Chicago, Illinois, and a Chase Manhattan Bank ("Chase") branch located in Dearborn, Michigan.  Id.  Turismo also retained a New York-based firm, Beacon Hill Service Corporation ("Beacon Hill"), to act as its "international business agent."  Id.  Many, though not all, transactions facilitated by Beacon Hill on Turismo's behalf originated with U.S. banks and were cleared through U.S. banks.  Id.  Testifying in his own defense at trial, Mazza described New York-based Beacon Hill as follows:  "Essentially, it was as if it were a checking account.  It allowed me to deposit checks. . . .  And the most important thing for the development of my business as of that moment was to make wire transfers from my office in Chile."  Id.  Turismo used its United States bank accounts to facilitate thousands of transactions totaling hundreds of millions of dollars.  Id.

In addition to these bank accounts, Turismo's employees and owners physically traveled to the United States carrying bulk cash, often denominated in Euro and other European currencies.  Id.  They entered the United States through Los Angeles International Airport ("LAX").  Id.  Twice, Mazza was stopped upon arrival at LAX by agents of the Drug Enforcement Administration.  Id. at 487-88.  The first time he was carrying $1.8 million in Euro and other foreign currency, and the second he was carrying approximately $2 million.  Id.  Once in the United States, Turismo's representatives delivered the currency to an armored car service, which transported the currency to the

Associated Foreign Exchange, where the funds were transmitted in their dollar equivalent to Turismo's U.S. bank accounts.  Id. at 487.

This Court found that Turismo affected interstate commerce, including through fund transfers between United States bank accounts and transfers to foreign countries that originated in the United States.  Id. at 489-90.  The Court further concluded that Turismo was required to register as a money-transmitting business in the states of Illinois, Michigan and New York.  Id. at 490-93.  It found, among other things, that Turismo used an online account with Harris in Illinois to facilitate wire transfers, including $106 million in 2005 alone.  Id. at 490-91.  It found that in the first three months of 2007, Turismo's Michigan-based Chase account received and transmitted approximately $42 million.  Id. at 492.  In addition, when Turismo opened its Michigan account with Chase, it represented that it was a corporation organized under the laws of Michigan, listed a business address in Michigan, and identified Mazza as a company vice president authorized to make withdrawals under the account.  Id.  The Court found that the New York-based accounts with IDB received and transmitted tens of millions of dollars, and that more than $17 million worth of checks were drawn from Turismo's IDB accounts.  Id. at 493.  The Court found beyond a reasonable doubt that Turismo was required to be registered in the states of Illinois, Michigan and New York, and concluded that because Turismo failed to comply with the state law requirements, Mazza was guilty of conducting, controlling, managing, supervising, directing or owning an unlicensed money-transmitting business in violation of 18 U.S.C. § 1960(b)(1)(A).  Mazza, 607 F. Supp. 2d at 490-93.

Mazza premises his motion on Turismo's lack of presence in the United

States.  He contends that because Turismo's offices, employees and customers were not located in the United States, he did not operate as a money-transmitting business within the United States, and therefore is beyond the reach of 18 U.S.C. § 1960.  There are, of course, limits on the extraterritorial applications of United States federal law when extraterritorial enforcement is not contemplated by the statute.  See, e.g., EEOC v. Arabian American Oil Co., 499 U.S. 244, 248 (noting the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.") (quotation marks omitted), superseded by statute at Pub. L. 102-166, 105 Stat. 1071 (1991); United States v. Bowman, 260 U.S. 94, 96 (1922) ("Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it.").

In this instance, however, the Court's findings of fact and conclusions of law were premised on the conduct of Turismo and Mazza that occurred in the United States.  This distinguishes the case against Mazza from holdings that refused to extend extra-territorial jurisdiction to claims arising from conduct that exclusively occurred abroad.  See, e.g., Arabian American Oil Co., 499 U.S. at 248 (Title VII does not explicitly extend to conduct of American employers toward American employees in Saudi Arabia); Bowman, 260 U.S. at 96 (no jurisdiction over conspiracy claim when conduct occurred only on the high seas and abroad); United States v. Gatlin, 216 F.3d 207 (2d Cir. 2000) (law prohibiting sexual abuse of a minor does not extend to conduct

on a United States military installation outside of the territorial United States); <u>Kolias v.</u>

<u>D & G Marine Maintenance</u>, 29 F.3d 67 (2d Cir. 1994) (Longshore and Harbor Workers'

Compensation Act contained sufficiently clear expression of Congressional intent to

apply act extraterritorially).

   Because the evidence and the resulting findings were premised on the

actions of Mazza and Turismo within the United States, the Court need not consider

Mazza's argument that section 1960 and the Bank Secrecy Act do not, as a matter of law,

provide for extra-territorial jurisdiction.  Similarly, because the finding of guilt under 18

U.S.C. § 1960(b)(1)(A) was based on the actions of Mazza and Turismo in the states of

Illinois, Michigan and New York, and because I concluded that Turismo was required to

be licensed and/or registered as a money-transmitting business based on its activities in

those states, this Court need not consider Mazza's arguments concerning the extra-

territorial applications of the states' laws.

   The motion to dismiss for lack of subject matter jurisdiction is denied.

   SO ORDERED.

           P. Kevin Castel
          United States District Judge

Dated: New York, New York
  June 19, 2009