UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

-against-

MAURICIO ALFONSO MAZZA-ALALUF,

Defendant.
-----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-27-11
S1 07 Cr. 403 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

       Four individuals have filed petitions asserting that, as interested parties, they are entitled under 21 U.S.C. § 853 to a superior interest in property forfeited to the United States by defendant Mauricio Mazza Alaluf. The government moves to dismiss pursuant to Rule 32.2, Fed. R. Crim. P., arguing that the petitioners lack standing to bring these claims.

       For the reasons explained, the government's motion is granted, and the petitions are dismissed.

BACKGROUND

       A Superseding Indictment charged Mazza with conspiring to conduct an unlicensed money-transmitting business in violation of 18 U.S.C. § 1960, and a second count charged him with a substantive violation of section 1960. Mazza waived his Sixth Amendment right to a trial by jury, see Rule 23(a), Fed. R. Crim. P., and this case was tried to the Court on November 13 and 14, 2008. On January 29, 2009, the Court issued its Findings of Facts and Conclusions of Law, pursuant to Rule 23(c), Fed. R. Crim. P. United States v. Mazza-Alaluf, 607 F. Supp. 2d 484 (S.D.N.Y. 2009), aff'd, 621 F.3d 205 (2d Cir.), cert. denied, 131 S. Ct. 583 (2010). The Court concluded that Mazza knowingly conducted, controlled, managed,

supervised, directed or owned an unlicensed money-transmitting business operating in interstate and foreign commerce, failed to register the business under the laws of Illinois, Michigan and New York, and conspired to do the same. Id. at 489-93, 498-500. On September 10, 2009, the Court sentenced Mazza to a below-guidelines sentence of 42 months of imprisonment and to two years of supervised release. (Docket # 82.)

The Court also entered a preliminary order of forfeiture as to Mazza, which included a personal money judgment of $10,000,000, and separately ordered Mazza to forfeit his right, title and interest in certain properties. (Docket # 79.) Those properties specifically included all currency and monetary instruments seized from a Turismo account with JP Morgan Chase Bank totaling $1,618,712.18, approximately $21,419 in United State currency seized from the defendant at Los Angeles International Airport ("LAX") on or about March 31, 2007, and approximately $1,937,196.14 worth of foreign currencies seized from the defendant at LAX on that same date. (Docket # 79.) The preliminary order of forfeiture directed the government to publish notice of the forfeiture proceedings and, to the extent practicable, notify in writing any persons with an alleged interest in the specific properties. (Docket # 79.)

Four individuals have filed petitions asserting their entitlement to right, title and interest to the moneys subject to the Court's preliminary order of forfeiture. Alfred V. Furman asserts that he provided a loan to Mazza's money-transmitting business, Turismo Costa Brava, S.A. ("Turismo"). (Docket # 97 at 2.) According to Furman, an individual named Luis Mazza, who is a non-party to this action, confirmed that Turismo was in compliance with the laws of Chile and of the United States. (Docket # 97 at 2.) Furman states that based on Luis Mazza's assurances, he wired 210,000 euros (equivalent to approximately $245,000) to Turismo, and that, including interest, he is owed repayment totaling at least $390,000. (Docket # 97 at 2-3.)

Petitioner Sidney Rosenberg also states that Luis Mazza confirmed to him Turismo's legal compliance, and that Rosenberg then loaned $150,000 to Turismo. (Docket # 98.) Petitioner Leonard B. Feldman states that he received similar assurances from Luis Mazza, which prompted him to make loans of $1,500,000 and $500,000 to Turismo. (Docket # 96.) Including interest, Feldman asserts that Turismo now owes him at least $2,500,000. (Docket # 96.) Finally, petitioners Patricia and Arthur Dolins assert that Luis Mazza materially misrepresented Turismo's legal compliance with the law, and loaned Turismo a total of $350,000.[1] (Docket # 99 ¶¶ 4-7, 11.) They seek an additional $145,000 in interest. (Docket # 99 ¶ 15.)

Separate from the proceedings against Mauricio Mazza in this Court, civil and criminal proceedings against Turismo have commenced in Chile. According to the government, Chilean authorities have placed into receivership certain assets belonging to Turismo, Luis Mazza and Mauricio Mazza. (Lai Aff. ¶ 2.) At least five civil claims have been filed against Turismo in Chile. (Lai Aff. ¶ 3.) Mauricio and Luis Mazza also are being prosecuted in Chile on money laundering charges related to the activities of Turismo. (Lai Aff. ¶ 2.)

RULE 32.2 STANDARD

Rule 32.2(c)(1)(A), Fed. R. Civ. P., states that when a petitioner asserts an interest in forfeited property, "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." A motion to dismiss pursuant to Rule 32.2 is reviewed under the same standards as a motion to dismiss under Rule 12(b), Fed. R. Civ. P. "[B]ecause ancillary proceedings can be enormously complicated, 'procedures akin to those

---

[1] Petitioner Arthur Dolins separately submitted a petition dated December 2, 2009. Counsel acknowledges in its cover letter that it never filed the petition on the Court's electronic filing system, and the petition appears to overlap in substance with that of Arthur Dolins's wife, petitioner Patricia Dolins. Although it has never been filed, I reviewed the Arthur Dolins petition as part of my consideration of this Memorandum and Order.

-4-

available under the Federal Rules of Civil Procedure,' such as motions to dismiss . . . 'should be available to the court and the parties to aid in the efficient resolution of the claims.'" Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). (quoting Rule 32.2 advisory committee's note to subdivision (c)). A motion to dismiss pursuant to Rule 32.2(c)(1)(A) "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)," with the petition's allegations assumed to be true. Id.

Under the Federal Rules of Civil Procedure, a motion to dismiss for lack of standing is generally brought pursuant to Rules 12(b)(1) and 12(b)(6), which, respectively, govern motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. See, e.g., Connecticut v. Physicians Health Servs. of Connecticut, Inc., 287 F.3d 110, 114-15 (2d Cir. 2002). In such a motion, "standing is challenged on the basis of the pleadings, [the court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. at 114 (quotation marks omitted). "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). In applying Rule 12(b)(6), the petition "'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

DISCUSSION

    I.    <u>The Feldman, Furman and Rosenberg Petitions are Dismissed.</u>

Pursuant to 21 U.S.C. § 853(n)(2), "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his

alleged interest in the property." If a court determines by a preponderance of the evidence that the petitioner has legal right, title or interest in the property, the court may amend its forfeiture order accordingly. Id. § 853(n)(6). "[S]ection 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets after the preliminary forfeiture order has been entered." DSI Assocs. LLC v. United States, 496 F.3d 175, 183 (2d Cir. 2007).

The Second Circuit has repeatedly held that a general creditor lacks the property interest contemplated by the text of section 853(n)(2), and therefore lacks standing to pursue a claim. See, e.g., DSI Assocs., 496 F.3d at 183. "Without possessing . . . an interest 'in' a 'particular, specific asset' that is, or is part of, the forfeited property, [a petitioner] does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n)." Id.; accord United States v. Ribadeneira, 105 F.3d 833, 835-37 (2d Cir. 1997) (general creditors lack legal interest in any particular asset, and thus lack section 853(n) standing); United States v. Mendez, 2009 WL 1706354 (E.D.N.Y. June 17, 2009) (same).

Assuming the truth of the allegations set forth in their petitions, Feldman, Furman and Rosenberg have asserted only that they are general, unsecured creditors of Turismo. Each asserts that the seized funds belong to Turismo, and not to Mauricio Mazza personally. (Feldman Pet. at 6; Furman Dec. at 4; Rosenberg Pet. at 4.) They allege that Luis Mazza fraudulently induced them to invest in Turismo by falsely assuring Turismo's compliance with the laws of Chile and the United States. (Feldman Dec. at 6-7; Furman Pet. at 4; Rosenberg Pet. at 4.) Furman, Feldman and Rosenberg have alleged only that they made unsecured loans to Turismo, and that the loans were solicited by Luis Mazza. According to Furman, in November 2005, he instructed his financial advisor to wire 210,000 euros from his account to a Turismo account. (Furman Pet. at 2-3.) Feldman asserts that in November 2002, he instructed his

financial advisor to wire $2,000,000 to Turismo, and wired an additional $493,000 in U.S. currency to Turismo in March 2004. (Feldman Pet. at 2-3, 5.)

Rosenberg's purported loan to Turismo is somewhat less straightforward. According to his petition, in June 2005, Rosenberg forwarded $150,000 to his "good friend" Feldman, with the understanding that Feldman "would treat a like amount of Mr. Feldman's investment with Turismo as belonging to [Rosenberg]." (Rosenberg Pet. at 2-3.) Solely for the purpose of considering the government's motion, I assume that Rosenberg's transaction with Feldman constituted a valid loan to Turismo.

Assuming the truth of these petitions, they do not assert legal interest in the forfeited funds. It is, moreover, implausible to connect the properties subject to the forfeiture order to the petitioners' investments. The $1,937,196.14 in foreign currency and the $21,419 in United States currency, seized at LAX on March 31, 2007, are temporally far removed from the petitioners' loans of 2002 and 2005. The petitioners do not assert a direct nexus between their loans and these seizures of hard currency. Similarly, the petitioners do not assert that their loans to Turismo had any nexus to the JP Morgan Chase Bank account that was subject to the preliminary forfeiture order. While the Court is sympathetic to the petitioners' predicament, there is no authority to support their contention that, as "defrauded investors," they have standing to contest the forfeiture. (Feldman, et al., Opp. Mem. at 5.) As a result, the government's motion to dismiss the petitions is granted.

II. None of the Petitions Has Set Forth a Recognized Basis for the Imposition of a Constructive Trust.

The petition of Patricia Kaplin Dolins and her husband and "co-petitioner" Arthur Dolins set forth a different rationale as to their legal interest in the forfeited property. The Dolinses assert that their "standing to bring the instant Petition is premised upon, inter alia, the

existence of a constructive trust" based on the misrepresentations of Luis Mazza. (Dolins Pet. ¶ 4.) As with the other three petitions, they assert that Luis Mazza personally solicited their loans, and assured them that Turismo's business activities complied with the law. (Dolins Pet. ¶¶ 5-12.) They contend that "because Mazza and Turismo obtained these funds by material misrepresentations and omissions, Turismo and its principals and agents held these funds in constructive trust for Petitioner and Co-Petitioner." (Dolins Pet. ¶ 14.)

In their memorandum in opposition to the government's motion to dismiss, Feldman, Furman and Rosenberg also contend that they are entitled to be made whole via a constructive trust, and that, as citizens of Illinois, the imposition of a constructive trust would be governed by the same authority used in reviewing the Dolins petition. (Feldman, et al., Opp. Mem. at 5-15.) Their petitions make no mention of a constructive trust. Nevertheless, solely for the purpose of this motion, I assume arguendo that Feldman, Furman and Rosenberg have standing, and have asserted constructive trust claims in their respective petitions.

A constructive trust is an equitable remedy, and in forfeiture cases, the petitioner's legal interest is determined pursuant to the jurisdiction that creates the alleged property rights. The Dolinses and the government both treat Illinois law as controlling. Under Illinois law, "[a] constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct." Eychaner v. Gross, 202 Ill.2d 228, 274 (2002). "Two essential elements of a constructive trust action are the existence of identifiable property to serve as the res upon which a trust can be imposed and possession of that res or its product by the person who is to be charged as the constructive trustee." People ex rel. Hartigan v. Candy Club, 149 Ill. App. 3d 498, 502 (Ill. App. Ct. 1986). Then-District Judge Lynch has observed that although "a constructive trust is an equitable remedy, it nonetheless qualifies as a

'legal right' in property under § 853(n)(6)(A) and warrants an amendment of an order of forfeiture if the property ordered forfeited is traceable to property held in constructive trust." United States v. Lesak, 2009 WL 1788411, at *5 (S.D.N.Y. June 23, 2009) (citing United States v. Schwimmer, 968 F.2d 1570, 1574 (2d Cir. 1992)).

In their 39-page opposition memo, the Dolinses argue that under Illinois law, a constructive trust may be imposed to facilitate the return of money. This is an accurate description of Illinois law. See, e.g., Smithberg v. Illinois Municipal Retirement Fund, 192 Ill. 2d 291, 298 (2000) (a constructive trust may be imposed "[w]hen a person has obtained money to which he is not entitled . . . ."). Nevertheless, "[t]he proceeds of the alleged wrongful conduct must exist as an identifiable fund traceable to that conduct, such that it can become the res of the proposed trust." Eychaner, 202 Ill.2d at 274. Identification of a specific res has been treated as necessary for a successful petition under section 853(n), DSI Assocs., 496 F.3d at 183, including a traceable property interest that is vindicated in a constructive trust, Lesak, 2009 WL 1788411, at *5.

Luis Mazza has submitted an affidavit dated November 18, 2009, which identifies him as a director of Turismo. (L. Mazza Aff. ¶1.) He states that, in his view, the forfeited properties were Turismo's "working capital," "of which at least 70% belongs to" Dolins, Feldman and Furman. (L. Mazza Aff. ¶ 8; emphasis omitted.) Luis Mazza also describes those same three petitioners as "long-term venture capitalists of Turismo . . . ." (L. Mazza Aff. ¶ 8(a).) He asserts that Feldman's loan was first wired from Switzerland to an account in Chile, and then to a Turismo account in New York, an account in Chicago, and then to a Michigan-based JP Morgan Chase account. (L. Mazza Aff. ¶ 10(c).) The loans from the Dolinses and Furman were similarly transferred to the Illinois account, and then to the Michigan account. (L. Mazza Aff. ¶¶

11(c), 12(c).) But to satisfy Illinois's traceability requirement, the res's "identity as a fund must be preserved, so that it can be distinguished from all other money." Union Nat'l Bank of Chicago v. Goetz, 138 Ill. 127, 135 (1891). At best, the funds here were "mixed and confounded in a general mass of property of the same description," id., and therefore not traceable.

In certain cases, such as Hartigan, 149 Ill. App. 3d at 502, Illinois courts have held that a plaintiff was not required at the pleading stage to trace the res of a constructive trustee, provided that there is a misappropriation allegation. But in Hartigan, the constructive trust remedy was premised on a fiduciary relationship between the beneficiary of a constructive trust and the alleged wrongdoer. Id. Illinois courts have sometimes treated a fiduciary relationship as an essential element to imposing a constructive trust. See Senese v. Climatemp, Inc., 222 Ill. App. 3d 302, 315 (Ill. App. Ct. 1991) ("In an action for a constructive trust, the complaint must allege a fiduciary relationship existed and must allege facts charging actual or constructive fraud."). Constructive trusts have been treated as an especially appropriate remedy for the violation of a fiduciary duty. See, e.g., White Gates Skeet Club, Inc. v. Lightfine, 276 Ill. App. 3d 537, 541 (Ill. App. Ct. 1995) ("As a matter of public policy, in the corporate context, courts have been 'inveterate and uncompromising' in their application of the constructive trust remedy to fiduciaries who have usurped corporate opportunities.").[2]

The Dolins petition fails to assert that Luis Mazza or Turismo were in a fiduciary relationship with Arthur or Patricia Dolins. As with the other petitioners, they acted as generally creditors to Turismo. Illinois does not recognize such a relationship as the basis for a fiduciary

---

[2] Of course, the Second Circuit requires a section 853(n) petitioner to establish interest in a particular asset. DSI Assocs., 496 F.3d at 183; Ribadeneira, 105 F.3d at 846. It is possible that Illinois may recognize the imposition of a constructive trust in circumstances that are broader than those recognized by the Second Circuit as requirements for relief under 853(n), thus bringing into conflict the state's law of constructive trust and the federal courts' application of section 853(n). Because the petitioners have not adequately alleged an entitlement to a constructive trust under Illinois law, I need not reach this potential issue.

duty. See, e.g., R.J. Management Co. v. SRLB Development Corp., 346 Ill. App. 3d 957, 968-69 (Ill. App. Ct. 2004) (the debtor/creditor relationship is arm's length and does not give rise to fiduciary obligations). Most importantly, the Dolins petition has not alleged that their loans to Luis Mazza and Turismo can be traced to the properties subject to the preliminary order of forfeiture. An interest in identifiable property has been treated as a requirement under federal courts' application of section 853(n), DSI Assocs., 496 F.3d at 183, and under Illinois law governing the creation of a constructive trust, Eychaner, 202 Ill.2d at 274. Similarly, the petitions of Feldman, Furman and Rosenberg have not alleged that the funds they provided to Turismo are traceable to the assets subject to this Court's preliminary order of forfeiture.

I have reviewed the petitioners' other arguments, including the contentions that they lack a remedy at law and that that the government's interpretation of section 853 violates the Tenth Amendment of the U.S. Constitution and the Fifth Amendment's due process clause, and conclude that they are without merit.

CONCLUSION

The petitions of Feldman, Furman, Rosenberg and Arthur and Patricia Dolins petitions are DISMISSED. (Docket # 96, 97, 98, 99.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 26, 2011